## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CHRISTINE CLARK,** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | **No. 09-192** |
| **Commissioner of the** | : | |
| **Social Security Administration,** | : | |
| **Defendant** | : | |

## <u>REPORT AND RECOMMENDATION</u>

TIMOTHY R. RICE                                                          June 29, 2010
U.S. MAGISTRATE JUDGE

      Christine Clark seeks judicial review of the Administrative Law Judge's ("ALJ") decision

rejecting her application for Supplemental Security Income ("SSI") and Disability Insurance

Benefits ("DIB"). Clark asserts she is disabled due to neck pain, mental illness, fibromyalgia,[1]

irritable bowel syndrome, chronic fatigue syndrome, myofascial pain syndrome, headaches, and

carpal tunnel syndrome. R. 105.

      Clark alleges the ALJ's decision is not supported by substantial evidence because the

ALJ: (1) erred in finding Clark's testimony incredible; (2) failed to properly evaluate the treating

and non-treating physicians' opinions; and (3) failed to include all of Clark's limitations in the

hypothetical to the vocational expert ("VE"). <u>See</u> Plaintiff's Opening Brief in Support of Her

---

[1] Fibromyalgia is a chronic disorder characterized by pain and stiffness in the muscles and joints that either is diffused or has multiple trigger points. <u>Dorland's Illustrated Medical Dictionary</u> 771 (31st ed. 2007) [hereinafter <u>Dorland's</u>]; <u>see also</u> Medline Plus, http://www.merriam-webster.com/medlineplus/Fibromyalgia (last visited June 2, 2010).

1

Motion for Summary Judgment, at 13-23, Clark v. Astrue, No. 09-2846 (D. Del. May 20, 2010)

[hereinafter Plaintiff's Brief].

After careful review, I find the ALJ's decision was supported by substantial evidence.

The ALJ's credibility determination was based on inconsistencies between Clark's testimony and

the record, see Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); the ALJ considered the

treating and non-treating physicians' opinions, and rejected opinions that conflicted with the

record, see Plummer v. Afpel, 186 F.3d 422, 431 (3d Cir. 1999), see also 20 C.F.R. §§

404.1527(d), 416.927(d); and the ALJ's hypothetical to the VE included all of Clark's medically

established limitations, see Plummer, 186 F.3d at 431.  I respectfully recommend Clark's request

for review be DENIED and judgment be entered for the Commissioner.

## BACKGROUND

On January 25, 2005, Clark sought SSI and DIB, alleging disability as of November 22,

2004.  R. 30, 55.  Her application was denied on August 9, 2005, R. 32-33, and she timely sought

a hearing, R. 46-48.   A hearing featuring testimony from Clark, her mother, and vocational

expert Diana C. Sims was held on February 26, 2007.  R. 496-537.  Clark was represented by

counsel.  R. 498.

The ALJ applied the five-step sequential analysis[2] to determine Clark's disability claim.

---

[2] The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920. These steps are summarized as follows:

Step One:  If the claimant is working and the work is substantial gainful activity, a finding of not disabled is directed.  If not, proceed to Step Two.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Step Two:  If the claimant is found not to have a severe impairment, or severe

R. 13-28.  At step one, the ALJ found Clark did not engage in substantial gainful activity at any time since the alleged onset of her disability.  R. 15.  At step two, the ALJ found Clark suffered from the following severe impairments: fibromyalgia, depression, anxiety with panic attacks, trochanteric bursitis of the right hip,[3] and degenerative disc disease of the cervical spine.  R. 16.  At step three, the ALJ found Clark's impairments or combination of impairments did not meet, or medically equal, one of the listed impairments.[4]  R. 16-17.  The ALJ determined Clark had the

combination of impairments, which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed.  If there is a severe impairment, proceed to Step Three.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Step Three:  If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  If not, proceed to Step Four.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Step Four:  If the claimant retains the RFC to perform past relevant work, a finding of not disabled is directed.  If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step Five.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Step Five: The Commissioner will then consider the claimant's RFC, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant can adjust to other work or is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v).

[3] Trochanteric bursitis is the inflammation of a trochanteric bursa which causes pain on the lateral part of the hip and thigh.  Dorland's at 269.

[4] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background.  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity.  Id.; see 20 C.F.R. §§ 404.1525(a), 416.925(a) (purpose of the listings is to describe impairments "severe enough to prevent a person from doing any gainful activity").  The listing was designed to operate as a presumption of disability making further inquiry unnecessary.  Sullivan, 493 U.S. at 532.

Residual Functional Capacity ("RFC")[5] to perform light work that was simple, unskilled, and low stress, not at a production pace, and with occasional changes in the work setting.  R. 17.  In determining Clark's RFC, the ALJ considered Clark's subjective complaints, but found Clark incredible because of contradictory statements, her medical record of conservative treatment, and the unremarkable results of objective tests.  R. 21.

The ALJ also rejected the opinions of Clark's treating and non-treating physicians, Dr. Lourdes Aponte, Dr. John Gomez, and Dr. Allen Weiss.  See R. 22.  The ALJ rejected Dr. Aponte's opinion because she examined Clark only once and the objective findings of abnormality were minimal.  R. 22.  The ALJ also found Dr. Gomez's opinion did not warrant controlling weight because it relied on Clark's subjective complaints, which the ALJ found incredible, and was inconsistent with Dr. Gomez's own records, which reflected conservative treatment and limited objective findings.  Id.  The ALJ rejected Dr. Weiss' opinion because Dr. Weiss also relied on Clark's subjective complaints and Dr. Weiss' treatment notes discussed Clark's positive response to prescription medication and behavior modification.  Id. at 21-22.  The ALJ found Dr. Gomez's and Dr. Weiss' treatment notes more persuasive than their opinions, which the ALJ noted were pre-printed, that is, written by Clark's counsel and given to the physicians to sign.  Id.

At step four, the ALJ found Clark was unable to perform past relevant work, R. 22, and at step five, the ALJ determined there are a significant number of jobs in the national economy

---

[5] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

Clark could perform based on her age, education, work experience, and RFC.  R. 23-24.  Clark's

benefits were denied on May 21, 2007.  R. 10-24.  On March 10, 2009, the Appeals Council

denied review.  R. 6.

<u>FACTUAL HISTORY</u>

Clark was 40 years old at the time of the ALJ's decision.[6]  <u>See</u> R. 501.  Clark has her

GED and previously worked as a deli manager, bank teller, and sales associate.  R. 107, 502-05.

She lives with her husband and two children, ages 11 and 14.  R. 502.  Clark's medical history is

highlighted as follows:

• October 3, 2004:  Clark injured her neck, back, and right arm in a motor vehicle

accident.  R. 547.

• February 1, 2005:  Dr. Aponte examined Clark and reported Clark's

neck was supple and there was some tenderness on her spine and soft tissue.  R. 297.  Clark had

full range of motion for all her joints and no synovitis.[7]  <u>Id.</u>  Nevertheless, Dr. Aponte opined

Clark "would not be able to work any job on a regular 40-hour a week basis."  R. 338.  Dr.

Aponte further stated if Clark attempted to work even a sedentary job, after one or two days, her

fibromyalgia symptoms would flare up and she would be required to stay home and rest.  <u>Id.</u>

---

[6] Clark is considered a "younger person" under the Commissioner's regulations, which define a younger individual as a person under age 50.  <u>See</u> 20 C.F.R. §§ 404.1563(c); 416.963(c).  Age is considered one of the relevant factors in determining whether a claimant can adjust to other work in the national economy.  Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. §§  404.1563(a); 416.963(a); however, a younger person's age is generally not considered to seriously impact the ability to adjust to other work, 20 C.F.R. §§ 404.1563(c); 416.963(c).

[7] Synovitis is inflammation of a synovium resulting in pain upon movement.  <u>Dorland's</u> at 1879.

•      June 11, 2005:  Dr. Joseph Keyes performed a psychological consultative

examination of Clark and diagnosed Clark with a mood disorder with depressive features, a panic

disorder, and mild dysarthia.  R. 303-06.  Dr. Keyes also noted Clark exhibited appropriate social

and interpersonal skills and adequate cognitive function.  Id.

•      July 26, 2005:  Dr. Prudencio Rosas, a consultative examiner, noted Clark had

full range of motion of all joints and no signs of sensory or motor deficits.  R. 327.  However, Dr.

Rosas also noted Clark experienced pain when maneuvering her head, shoulder, back, knees, and

hip.  Id.  Additionally, Clark expressed some sensitivity when touched on her neck, arms and

extremities.  Id.

•      January 6, 2006 - December 15, 2006:  Dr. Allen Weiss treated Clark for

depression and panic attacks.  R. 414-25.  Dr. Weiss reported Clark's past history of

fibromyalgia, degenerative discs, arthritis, and chronic fatigue.  Id.  During his initial psychiatric

evaluation, Dr. Weiss noted Clark's attention and concentration were fair.  R. 423.  Dr. Weiss

described Clark as alert and oriented.  R. 423.  Dr. Weiss prescribed Klonopin for Clark's anxiety

and panic attacks and suggested some behavior modification.  R. 420-22.  Dr. Weiss also

prescribed Wellbutrin for depression.  Id.  On January 20, 2006, Dr. Weiss noted Clark's

condition had improved because the behavior modification exercises he prescribed helped her

with her panic attacks.  Id. at 422.  On February 10, 2006, Clark reported her medication was also

helping her anxiety and panic attacks.  R. 421.  On March 10, 2006, Dr. Weiss reported "[Clark]

feels that the behavior modification aspect goes [well], that she has been making headway and

she has been practicing going to new places."  R. 420-22.  Dr. Weiss stated Clark was able to

drive her son to the hospital, something she would not have done before because of her anxiety

6

and panic attacks.  Id.  On August 11, 2006, Clark reported her rheumatologist[8] recommended Cymbalta[9] to help her fibromyalgia.  R. 418.  Dr. Weiss prescribed it.  Id.  However, during her October and November visits, Clark stated Cymbalta made her feel fatigued.  R. 415-16.  Her prescription was reduced.  See R. 415.  When Clark continued to complain of fatigue on December 15, 2006, Dr. Weiss recommended a vegetarian diet instead of medication.  R. 414. Nevertheless, Dr. Weiss opined Clark "would not be able to work any kind of job on a regular 40-hour a week basis" because of psychiatric problems and fatigue.  R. 400-01.  Dr. Weiss stated it was unlikely Clark would be able to return to work in the near future.  R. 401.  Dr. Weiss did not explain his opinion.  R. 401.

•       January 24, 2006 - May 15, 2006:  Clark was examined by neurologist Dr. Paul Peet for headaches, fatigue, neck pain, and memory disturbance.  R. 351-63.  Clark was able to give a detailed history when questioned about her memory loss.  R. 355.  Clark's neurological exams were normal.  R. 351-63.  An MRI of Clark's brain showed no significant abnormality.  R. 363.  An MRI of Clark's cervical spine showed moderate spondylitic changes.[10]  R. 362.

•       July 20, 2006 - January 31, 2007:  Rhuematlogist Dr. John Gomez treated Clark for fibromyalgia.  R. 440, 475-91.  Clark complained of fatigue, R. 478, hip pain, R. 480-81, neck and shoulder pain, R. 482 and fibromylgia flare ups, R. 475, 482.  On examination, Clark had full range of motion of the extremities, no synovitis, no neurologic, motor, or sensory

---

[8] A rheumatologist is a specialist in inflammatory, degenerative, or metabolic deranged disorders of the connective tissue structures, joints, muscles, and tendons.  Dorland's at 1663.

[9] Cymbalta is a drug used to treat major depression and anxiety and to manage fibromyalgia.  RxList, http://www.rxlist.com/cymbalta-drug.htm (last visited June 21, 2010).

[10] Spondylitic changes refers to inflammation of the vertebrae.  Dorland's at 1779.

problems.  R. 484.  November 21, 2006 tests showed minimal osteophytic spurring[11] involving

the first carpal-metacarpal joint but no evidence of a significant inflammatory osteoarthritis

process, no evidence of fracture or dislocation on the right lower leg or right ankle.  R. 490.

Clark's rheumatoid factor test[12] and ANA screening[13] were negative.  R. 489-90.  X-rays failed to

show significant abnormality.  Id.  Each of Dr. Gomez's reports stated Clark was generally in

good health.  See R. 475-82.  Some reports also noted Clark's challenges with her trigger points.

See R. 475, 477, 478, 482.  Dr. Gomez prescribed Ultracet[14] and Skelaxin.[15]  R. 483.  He noted

the medication controlled Clark's pain.  Id.  Nevertheless, Dr. Gomez opined Clark "would not

be able to maintain any kind of job on a regular 40-hour a week basis" because her chronic pain

would significantly affect her ability to concentrate and she would need significant unscheduled

rest periods during the day.  R. 473.

•       September 25, 2006:  Dr. Mark J. Boytim examined Clark and diagnosed her with

right hip trochanteric burstis.  R. 427.  Dr. Boytim administered a cortisone injection and

---

[11] Osteophytic spurring refers to the outgrowing of bone.  Dorland's at 1369.

[12] A rheumatoid factor test is used to diagnose rheumatoid arthritis and Sjogren's syndrome.  Medline Plus, http://www.nlm.nih.gov/medlineplus/encyclopedia (search "rheumatoid factor test;" then follow "rheumatoid factor" hyperlink) (last visited June 24, 2010).

[13] An ANA screening is a test for autoimmune disorders.  Medline Plus, http://www.nlm.nih.gov/medlineplus/encyclopedia (search "ANA screening;" then follow "Antinuclear Antibody Test" hyperlink) (last visited June 24, 2010).

[14] Ultacet is a pain relief medication.  See RxList, http://www.rxlist.com/ultracet-drug.htm (last visited June 22, 2010).

[15] Skeletin is a pain relief medication usually used in conjunction with physical therapy to relieve discomfort caused by painful musculoskeletal conditions.  See RxList, http://www.rxlist.com/skelaxin-drug.htm (last visited June 22, 2010).

recommended Clark attend physical therapy.  Id.

•        February 26, 2007:  Clark testified she can only stand and walk for a few minutes,

sit for thirty minutes, and lift only five pounds.  R. 518-19.  Clark also testified: (1) she gets

confused and forgetful and suffers from panic attacks and depression, R. 506, 511; (2) she

experiences severe pain and fatigue everyday, R. 508-11; (3) she experiences stiffness, severe

headaches, and severe pain in her neck, shoulders, upper and lower back, wrist, hands, hip, and

feet, R. 508-11; (4) it is difficult for her to do simple tasks, such as buttoning up a blouse or

zipping up a jacket, R. 512; (5) she is unable to style her hair, write lists, and at times even hold

her cup without it falling out of her hand, Id.; and (6) she rarely uses the computer.  Id.  Clark's

mother testified and corroborated Clark's testimony.  Clark's mother said Clark complains of

pain everyday, can only perform light tasks, and frequently visits physicians.  R. 534-35.

## DISCUSSION

I.      Legal Standard

I must determine whether substantial evidence supports the Commissioner's final

decision.  42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The

factual findings of the Commissioner must be accepted as conclusive if they are supported by

substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. §

405(g)); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009); Rutherford, 399 F.3d at

552.  "Substantial evidence is 'more than a mere scintilla.'"  Diaz, 577 F.3d at 503 (quoting

Plummer, 186 F.3d at 427).  It is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v.

NLRB, 305 U.S. 197, 229 (1938)); Diaz, 577 F.3d at 503.  I may not weigh the evidence or

substitute my own conclusions for that of the ALJ.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir.

2002).  I must defer to the ALJ's evaluation of evidence, assessment of the credibility of

witnesses, and reconciliation of conflicting expert opinions.  Diaz, 577 F.3d at 506.  If the ALJ's

findings of fact are supported by substantial evidence, I am bound by those findings, even if I

would have decided the factual inquiry differently.  Fargnoli, 247 F.3d at 38.  Nevertheless, I

must remain mindful that "leniency [should] be shown in establishing claimant's disability."

Reefer, 326 F.3d at 379 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain plenary review over the ALJ's applications of legal principles.

Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Thus, an ALJ's decision based on an

incorrect legal standard cannot stand even if I find it supported by substantial evidence.  Jackson

v. Astrue, 2010 WL 1377522, *2 (D. Del. Mar. 30, 2010) (citing Friedberg v. Schweiker, 721

F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  20 C.F.R. §§ 404.1520, 416.905; Diaz, 577 F.3d at 503 (citing Burnett, 220

F.3d at 118).  The claimant satisfies her burden by showing an inability to return to her past

relevant work.  Rutherford, 399 F.3d at 551.  Once this showing is made, the burden shifts to the

Commissioner to show the claimant, given her age, education, and work experience, has the

ability to perform specific jobs existing in the economy.  20 C.F.R. §§ 404.1520, 416.920; see

Rutherford, 399 F.3d at 551.

II.     Clark's Claims

    A.     Clark's Credibility

Clark alleges the ALJ failed to properly evaluate her credibility by not: (1) fully

discussing the reasons she found Clark incredible; and (2) identifying which medical evidence

discredited Clark's description of her pain and symptoms.  See Plaintiff's Brief at 19.

A credibility finding merits deference based on the ALJ's ability to observe the claimant's

demeanor.  See Reefer, 326 F.3d at 380; see also Bembery v. Barnhart, 142 Fed. Appx. 588, 591

(3d Cir. 2005).  I must nevertheless exercise meaningful review.  See Cao v. United States, 407

F.3d 146, 152 (3d Cir. 2005).  The reasons supporting credibility findings must be substantial

and bear a legitimate nexus to the findings as demonstrated by inconsistent statements,

contradictory evidence, or inherently improbable testimony.  See Reefer, 326 F.3d at 380; accord

St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) (credibility

determinations should not be reversed unless "inherently incredible or patently unreasonable" as

long as the ALJ considers all relevant factors and explains his decisions).  When a conflict in the

evidence exists, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or

for the wrong reason."  Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  If supported by

substantial evidence, the ALJ's credibility findings may not be disturbed on appeal.  Plummer,

186 F.3d at 427.

Substantial evidence supports the ALJ's determination that the medical record did not

support Clark's testimony about her physical and psychiatric impairments and limitations.

    1.     Clark's Physical Impairments

Clark testified she experiences severe pain and fatigue, in the form of stiffness, severe

pain in her neck, shoulders, upper and lower back, wrist, hands, hip and feet, and severe headaches, causing her to take pain medication everyday.  R. 508-11.  Clark also testified she can stand and walk only for a few minutes, sit for thirty minutes, and lift five pounds.  R. 518-19. The ALJ found Clark's objective tests were unremarkable, raising doubts about the intensity, persistence, and limiting effects of Clark's symptoms.  R. 20.  The ALJ considered Dr. Aponte's examination report, which noted Clark had some spinal and soft tissue tenderness, but also noted Clark had full range of motion of all her joints and no synovitis.  R. 19; see also R. 297.  The ALJ discussed Dr. Rosas' report, which noted Clark complained of pain and sensitivity when touched on her neck, arms, and extremities, but had full range of motion of all joints and no signs of sensory or motor deficits.  R. 19; see also R. 327.

The ALJ reviewed Clark's neurological exam results and concluded it did not support her subjective complaints.  R. 19; see also R. 353, 355.  The ALJ noted results from Clark's brain MRI were negative.  R. 19; see also R. 353.  The ALJ also referenced Clark's cervical spine MRI which showed only degenerative disc disease, R. 19; see also R. 352, and laboratory tests which showed no inflammation.  R. 19; see also R. 353.  The ALJ noted Dr. Peet prescribed only conservative treatment– physical therapy sessions.  R. 19; see also R. 352, 356.

The treatment records of Dr. Boytim and Dr. Gomez also reflected conservative treatment.  R. 19.  For example, Dr. Boytim, who treated Clark for her right hip trochanteric burstis, administered a cortisone injection and recommended Clark attend physical therapy.  R. 20; see also R. 427.  The ALJ recognized Dr. Gomez also prescribed conservative treatment and reported unremarkable test results.  R. 20.  The ALJ noted Clark's pain was under control with Ultracet and Skelaxin.  R. 20; see also R. 483.  The ALJ reviewed Dr. Gomez's examination

12

findings which were consistent with Dr. Rosas' report.  R. 20; see also R. 483-84.  The ALJ also

noted a rheumatoid factor test and ANA screening were negative and X-rays showed no

significant abnormality.  R. 20; see also R. 489-90.

By carefully reviewing Clark's medical history and treatment, the ALJ had ample

justification for discrediting the extent of Clark's claimed limitations and symptoms.  The ALJ's

comprehensive review of the record, combined with first-hand observations of Clark at the

hearing, provides a sufficient basis for the credibility finding.

> 2.     Clark's Psychiatric Impairments

Clark testified she gets confused and forgetful and suffers from panic attacks and

depression.  R. 506, 511.  The ALJ found, however, Clark's limitations were less severe.  As

explained here, the ALJ's finding was supported by substantial evidence.

The ALJ noted Clark did not seek psychiatric treatment or therapy until January 2006,

more than a year after her alleged onset of disability in November 2004.  R. 21; see also R. 55,

423-25.  The ALJ examined the reports of Dr. Keyes and Dr. Weiss.  See R. 20; see also R. 305-

06.  The ALJ noted at the time of Dr. Keyes' examination Clark was not undergoing psychiatric

care and was not taking anti-depressant medication because she did not like the way it made her

feel.  R. 20; see also R. 303.  Although Dr. Keyes diagnosed Clark with a mood disorder with

depressive features, a panic disorder, and mild dysarthia, he also noted Clark exhibited

appropriate social and interpersonal skills and adequate cognitive function.  R. 20; see also R.

303-06.  The ALJ also noted Dr. Keyes had rated Clark's degree of limitation as only mild to

moderate.  R. 20; see also R. 302-08.

The ALJ thoroughly evaluated Dr. Weiss reports and discussed how the reports

13

demonstrated Clark's anxiety and panic attacks had improved with treatment.  R. 20; <u>see also</u> R. 414- 19.  The ALJ noted Dr. Weiss first started treating Clark on January 6, 2006 when he diagnosed her with major depression and panic attacks, imposed dietary restrictions, and recommended behavior modification exercises for her anxiety.  R. 20; <u>see also</u> R. 424.  More specifically, Dr. Weiss suggested Clark go to crowded places with a wristwatch and try to stay a little longer in that environment each time.  R. 424.  The ALJ reviewed Dr. Weiss' March 10, 2006 report, which stated Clark was making progress and going to new places on her own.  R. 20; <u>see also</u> R. 420.  The ALJ noted two months after beginning treatment Clark was able to drive her son to the hospital by herself, something she normally would not be able to do without experiencing anxiety or a panic attack.  R. 20; <u>see also</u> R. 420.  The ALJ also considered Dr. Weiss' April 7, 2006 report which stated Clark was not as anxious as she was before.  R. 20; <u>see also</u> R. 418-19.   Clark was experiencing less panic attacks.  R. 20; <u>see also</u> R. 418-19.  The ALJ noted Dr. Weiss recommended a vegetarian diet instead of medication when Clark complained of fatigue.  R. 21; <u>see also</u> R. 414.

Although Clark complained of memory loss, Dr. Peet noted Clark was able to give a detailed history of her memory disturbance.  R. 355.  The ALJ's careful review of uncontested medical records provides evidence to justify the ALJ's finding that Clark's testimony about the severity and intensity of her psychiatric challenges was contrary to the physicians' treatment records.

The ALJ also considered Clark's demeanor at the hearing, noting that despite her testimony to the contrary, Clark demonstrated normal memory, attention, and concentration.  R. 21.  Clark was able to answer all questions without hesitation.  <u>Id.</u>  Such first-hand observation of

a claimant is especially critical to assessing credibility in a fibromyalgia case because the

condition involves subjective complaints.  See Gonzalez v. Astrue, 537 F.Supp. 2d 644, 665 (D.

Del. 2008);  Rodriguez v. Barnhart, 2004 WL 502216, at *7 (D. Del. March 10, 2004).

Similarly, the ALJ found despite Clark's physical and psychiatric impairments, Clark

reported she was able to take care of her personal needs, do laundry, shop with assistance, drive,

prepare simple meals, use a computer a couple times a week, watch television, raise her children,

and attend monthly support groups.  See R. 21; see also R. 114-21.

The ALJ supported her credibility findings with reasonable reasons; and her findings had

a legitimate nexus to Clark's testimony and the medical record.  See Reefer, 326 F.3d at 380;  St.

George Warehouse, 420 F.3d at 298.

      B.     Treating/Non-Treating Physicians Opinions

Clark alleges the ALJ erroneously rejected the opinions of Clark's treating physicians, Dr.

Aponte, Dr. Gomez, and Dr. Weiss.  See Plaintiff's Brief at 13.  She contends the only

conflicting evidence is from a non-treating, non-examining, non-specialist who states Clark's

condition is not as serious as asserted by her physicians.  See Plaintiff Brief at 16 (citing R. 330-

31).  Clark maintains the ALJ improperly asserted her own subjective analysis of the record.  Id.

Although Clark concedes the physicians' opinions were prepared by counsel and pre-printed for

the physicians to sign, she asserts the ALJ improperly considered this fact in rejecting the

opinions.  Id. at 16-17.

 In determining the appropriate weight medical evidence deserves, the ALJ must first

assess whether it is from a treating, non-treating, or non-examining source.  A treating source is a

"physician, psychologist, or other acceptable medical source" who provides a patient with

"medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient. 20 C.F.R. §§ 404.1502, 416.902. A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." Id. A medical source is not a treating source if the treatment is based "solely on [the claimant's] need to obtain a report in support of [his or her] claim for disability," and not based on medical need for treatment. Id.

A treating source's opinion is entitled to controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p, 1996 WL 374188. A treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286).

Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the treating, non-treating, and non-examining sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports," and may not reject a treating physician's opinion "due to his or her own credibility judgments,

16

speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Non-treating source opinions are also generally entitled significant weight. 20 C.F.R. §§ 404.1502, 416.902. Non-treating sources are generally acceptable medical sources who have seen the claimant, but not in the context of an ongoing treatment relationship. Id. A source is non-treating if a claimant visits a medical source solely to obtain a report in support of his or her claim. Id. A consultative examiner is a non-treating source. Id. Opinions from non-treating sources do not carry as much weight as treating source opinions, but are generally entitled to more weight than the opinions of medical sources who have not examined the claimant. 20 C.F.R. §§ 404.1527(d), 416.927(d).

As explained below, the ALJ identified specific evidence in the record to justify his decision to reject opinions from Clark's treating physicians. The ALJ did not, as Clark claims, rely on her own personal opinions of Clark's condition. Moreover, unlike Dougherty v. Astrue, 2010 WL 1849379, *6-10 (D. Del. May 7, 2010), the ALJ identified specific conflicting evidence to discount the medical opinions Clark cites. The ALJ did not merely make conclusory statements to minimize the significance of the discredited medical opinions.[16]

### 1.    Dr. Aponte's Opinion

The ALJ considered Dr. Aponte's[17] opinion Clark was not able to work any job on a regular 40-hour-a-week basis and if Clark even attempted to work a sedentary job, after one or two days her symptoms would flare up and she would be required to stay home and rest. R. 22;

---

[16] Although not expressly cited by the ALJ, the opinions of the consulting medical examiners are consistent with the ALJ's conclusion. See e.g. R. 346, 362.

[17] Dr. Aponte examined Clark once and is a non-treating physician. 20 C.F.R. §§ 404.1527(d), 416.927(d); see also R. 297.

see also R. 338.  The ALJ found Dr. Aponte's report failed to support such severe impairments and limitations.  See R. 28; see also R. 248-63.

Dr. Aponte's treatment report noted minimal abnormality--  Clark's neck was supple and she had some tenderness on her spine and soft tissue, but Clark had full range of motion of all her joints and no synovitis.  See R. 22; see also R. 297.  As discussed above, the ALJ acknowledged Dr. Rosas' findings were consistent with the treatment report of Dr. Aponte, but noted both physicians state Clark had full range of motion of all joints and no synovitis.  See supra at 11-12; see also R. 19, 297, 327.  Although Dr. Aponte's findings are consistent with Dr. Rosas' report, the ALJ offered sufficient reasons for rejecting Dr. Aponte's opinion, which she found unsupported by the medical record and contrary to Dr. Aponte's treatment notes.

2.      Dr. Gomez's Opinion

The ALJ reviewed Dr. Gomez's[18] opinion Clark would not be able to maintain any kind of job on a regular 40-hour-a-week basis.  R. 22; see also R. 473-74.  The ALJ rejected this opinion because it was not supported by treatment notes.  R. 22.  Rather, ALJ found Dr. Gomez's treatment notes reflected conservative treatment and limited objective findings.  Id.  Additionally, the ALJ found Dr. Gomez: (1) included diagnoses he did not make, which were not supported by the medical record; and (2) relied only on Clark's subjective complaints, which the ALJ did not find fully credible.  Id.

The ALJ noted Dr. Gomez identified minimal negative objective findings.  R. 22.  For example, Dr. Gomez reported Clark experienced some challenges on her trigger points, but was

---

[18] Dr. Gomez had an ongoing doctor-patient relationship with Clark and qualifies as a treating physician.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also R. 473-74.

18

generally in good health.  R. 475, 478, 480, 482.  The ALJ also concluded Dr. Gomez's opinion was based on Clark's subjective complaints.  R. 22.  For example, in his opinion, Dr. Gomez stated Clark complained of chronic disabling pain, fatigue, and difficulty concentrating.  R. 473-72.  Dr. Gomez then concluded Clark would not be able to maintain any kind of job on a regular 40-hour-a-week basis because the chronic pain would significantly affect her ability to concentrate and she would need significant unscheduled rest periods throughout the day.  R. 473.  Dr. Gomez's treatment records do not discuss or reference any objective test to support his opinion Clark suffers from chronic pain and has problems concentrating.  His opinion is based on Clark's complaints of pain and fatigue.  R. 473-72.  Accordingly, the ALJ gave substantial reasons for not crediting Dr. Gomez's opinion.  See R. 22.

Moreover, the ALJ justifiably gave Dr. Gomez's opinion limited weight because the opinion was on a pre-preprinted form prepared by counsel, lacked specific functional limitations, and lacked a thorough explanation.  See Singleton v. Astrue, 542 F.Supp. 2d 367, 389-90 (D. Del. 2008).  The ALJ found, and Clark concedes, Dr. Gomez's opinion was pre-printed, that is, it was prepared  by counsel's office and signed by the physician, R. 22; see also R. 473-74.

Form reports which require physicians only to check boxes or briefly fill in the blanks are considered weak evidence, especially when the reports are not accompanied by written explanations.  See Mason, 994 F.2d at 1065.  Similarly, pre-printed opinions that do not offer specific limitations, written explanations, or support for assertions may also be considered weak evidence.  See Singleton, 542 F.Supp. 2d at 389-90.  The ALJ properly exercised his discretion to limit the weight of such opinions.  See 20 C.F.R. §§ 404.1527(d), 416.927(d), Mason, 994 F.2d at 1065; see also Singleton, 542 F.Supp. 2d at 389-90.

19

3.      Dr. Weiss' Opinion

The ALJ also rejected Dr. Weiss'[19] opinion Clark would not be able to work any kind of job on a regular 40-hour-a-week basis.  R. 22.  The ALJ rejected Dr. Weiss opinion because treatment notes showed Clark was positively responding to prescribed treatment for her anxiety and depression.  Id.  The ALJ also rejected Dr. Weiss' opinion because it was based on Clark's subjective complaints of fatigue.  Id.

The ALJ noted Dr. Weiss' behavioral modification treatment decreased the amount of panic attacks Clark experienced, R. 21; see also R. 420-22.  The ALJ recognized Clark was able to go to more places, at one point even driving her son to the hospital, something she would not have been able to do before treatment.  R. 21; see also R. 420, 422.  The ALJ considered Dr. Weiss' positive prognosis for Clark's condition, that is, Clark's panic attacks were treatable and curable.  R. 21; see also R. 415.

The ALJ acknowledged Dr. Weiss diagnosed Clark with chronic fatigue, R. 22; see also R. 400, but rejected the diagnosis because it was based on Clark's subjective complaints.  Id.  For example, Clark complained fibromyalgia caused her chronic fatigue.  See R. 414-16.  However, Dr. Weiss treated Clark for psychiatric impairments, not for physical impairments such as fibromyalgia.  R. 414-25.  These facts suggest Dr. Weiss' opinion on Clark's fatigue was based on Clark's subjective complaints, which the ALJ found incredible.  Moreover, Dr. Weiss recommended diet modification, rather than medication, to treat Clark's fatigue.  R. 414.  Such conservative treatment further supports the ALJ's conclusion Dr. Weiss' opinion was not

_____

[19] Dr. Weiss is a treating physician because he had an ongoing doctor-patient relationship with Clark.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also 414-25.

supported by the medical record.

The ALJ also justifiably discounted Dr. Weiss' opinion because it was on a pre-printed document and did not contain specific limitations or a thorough written explanation.  See supra at 18-19. The ALJ's rejection of Dr. Weiss' opinion was based on substantial evidence and explanation.

    C.    The ALJ's Hypothetical Included All of Clark's Limitations.

Clark alleges the hypothetical the ALJ posed to the vocational expert was incomplete because it did not include her chronic pain, the need to rest, the limitations cited by the treating physicians, Clark's testimony or the testimony of her witnesses.  See Plaintiff's Brief at 21.

Only those limitations found by the ALJ to be supported by the record should be included in the hypothetical to the vocational expert.  See Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 431.  The ALJ is not required to include in the hypothetical every impairment alleged by a claimant.  Rutherford, 399 F.3d at 554.  Rather, the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.  Id.  Vocational expert testimony is not substantial evidence unless it includes all credibly established limitations that are medically supported and uncontroverted in the record.  Id. (citing Burns, 312 F.3d at 123).  Nevertheless, a limitation that is medically supported, but contradicted by other evidence in the record, may or may not be found credible.  Id.  The ALJ may choose to credit portions of the evidence but "cannot reject evidence for no reason or for the wrong reason."  Id. (quoting Mason, 994 F.2d at 1066).  Finally, a limitation asserted by the claimant that lacks objective medical support may still be considered credible.  Rutherford, 399 F.3d at 554.  "In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed

symptom that is related to an impairment and is consistent with the medical record simply

because there is no objective medical evidence to support it."  Id.

The ALJ's hypothetical included the following limitations: (1) cannot work at productive

pace, that is, she cannot work on an assembly line; (2) only occasional decisionmaking or use of

judgment; and (3) low stress.  R. 528.  The ALJ was not obligated to impose limitations based on

Clark's alleged chronic pain, need to rest, limitations cited by the treating physicians or Clark's

other witnesses, because the ALJ had properly rejected these claims.  See R. 16.  The ALJ

included all impairments supported by the evidence.  Rutherford, 399 F.3d at 554.

Accordingly, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this 29th day of June, 2010, it is respectfully recommended that Clark's

request for review be DENIED.  Clark may file objections to this Report and Recommendation

within 14 days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72.  Failure to file

timely objections may constitute a waiver of any appellate rights.  <u>See</u> <u>Leyva v. Williams</u>, 504

F.3d 357, 364 (3d Cir. 2007).

<div style="margin-left: 40%;">

BY THE COURT:


 \s\ TIMOTHY R. RICE_____
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

</div>